# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-2854

———————————————

United States of America

*Plaintiff - Appellee*

v.

Rodrigo Rodriguez-Mendez

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Nebraska - Lincoln

——————————

Submitted: June 13, 2025
Filed: March 9, 2026

——————————

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Rodrigo Rodriguez-Mendez appeals the Memorandum and Order of the district court[1] denying his 2024 post-conviction motion for a "compassionate release" sentence reduction under 18 U.S.C. § 3582(c)(1)(A) because he "failed to show an

———

[1] The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

extraordinary and compelling reason to modify his sentence at this point in time." Rodriguez-Mendez argues the court made three reversible errors. For the following reasons, we affirm.

## I. Background

In January 2002, a jury convicted Rodriguez-Mendez, then the leader of a violent drug organization, of conspiracy to distribute methamphetamine, possession of methamphetamine with intent to distribute, and possession of a firearm during a drug trafficking crime. His two prior felony drug convictions resulted in a mandatory life sentence on the conspiracy count. See 21 U.S.C. § 841(b)(1)(A) (2002). He received a 480 month concurrent sentence for the possession charge and a 60 month consecutive sentence for the gun charge. We affirmed the conviction and sentence. United States v. Rodriguez-Mendez, 336 F.3d 692 (8th Cir. 2003).

In April 2021, Rodriguez-Mendez filed a motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). Federal courts have limited authority to reduce a sentence once it is imposed. Section 3582(c) as amended by the First Step Act of 2018[2] provides:

> (c) **Modification of an imposed term of imprisonment.** -- The court may not modify a term of imprisonment once it has been imposed except that --
> (1) in any case --
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that --

---

[2]First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

>(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Congress has expressly authorized the Commission, in promulgating "general policy statements regarding . . . section 3582(c)(1)(A), [to] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The relevant policy statement is USSG § 1B1.13.

In his § 3582(c)(1)(A) motion, Rodriguez-Mendez argued that the First Step Act enacted sentencing penalty reductions for recidivist drug offenders, a dramatic change in sentencing policy that constituted "extraordinary and compelling reasons" for a sentence reduction. The district court denied the motion, concluding "that § 3582(c)(1)(A) relief is foreclosed by United States v. Crandall, 25 F.4th 582 (8th Cir. 2022) [which] held that a non-retroactive change in law regarding sentencing, such as § 401(a)(2) of the First Step Act, whether offered alone or in combination with other factors, cannot contribute to a finding of extraordinary and compelling reasons for a reduction in sentence." United States v. Rodriguez-Mendez, 65 F.4th 1000, 1001 (8th Cir. 2023) (cleaned up).

Rodriguez-Mendez appealed, arguing Crandall is contrary to a later Supreme Court decision, United States v. Concepcion, 597 U.S. 481 (2022). We disagreed and affirmed. 65 F.4th at 1003-04; accord United States v. King, 40 F.4th 594 (7th Cir. 2022). We noted that the Sentencing Commission was considering significant amendments to § 1B1.13, but we concluded "that Crandall remains controlling Eighth Circuit law." 65 F.4th at 1004.

After the Sentencing Commission adopted amendments to USSG § 1B1.13 in 2023, Rodriguez-Mendez filed a second motion in April 2024, arguing that two "extraordinary and compelling" reasons for a § 3582(c)(1)(A) reduction now exist: (i) the First Step Act eliminated mandatory minimum penalties that mandated his life sentence, and § 1B1.13(b)(6) now provides that a change in the law is an extraordinary and compelling reason if the defendant has served more than ten years of an "unusually long sentence" that produces a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed;" and (ii) he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided," § 1B1.13(b)(1)(C). He also argued that his post-sentence rehabilitation, though not by itself an extraordinary and compelling condition, should be considered in determining whether a reduction is warranted. See § 1B1.13(d).

The district court denied the motion, concluding that Rodriguez-Mendez had not shown "extraordinary and compelling" reasons for relief because (i) his sentence is not unusually long given the egregiousness of his conduct, and (ii) he has not shown that he needs specialized care that the prison is unwilling to provide and that his treatment delays put him at risk of serious health decline. The court therefore held that Rodriguez-Mendez is ineligible for a sentence reduction. It did not discuss his rehabilitation argument.

Rodriguez-Mendez timely appealed, arguing the district court erred in its "extraordinary and compelling" reasons rulings and by failing to consider his rehabilitation. "We review de novo the applicability of the FSA to a defendant's case, including whether a defendant is eligible for a sentence reduction and review for an abuse of discretion the district court's decision to grant or deny an authorized sentence reduction." United States v. Rogge, 141 F.4th 902, 903-04 (8th Cir. 2025) (cleaned up). The defendant bears the burden to establish that compassionate release is warranted. United States v. Avalos Banderas, 39 F.4th 1059, 1062 (8th Cir. 2022).

## II. Discussion

After considering the applicable § 3553(a) sentencing factors, a district court may reduce a sentence under § 3582(c)(1)(A)(i) if it finds that one or more "extraordinary and compelling reasons" warrant such a reduction and that "such a reduction is consistent with the Sentencing Commission's applicable policy statements." In 2023, the Sentencing Commission amended § 1B1.13 to include subsection (b)(6), which provides that certain non-retroactive changes in the law may be considered as an extraordinary and compelling reason if the defendant has served at least 10 years of an unusually long sentence "but only where such change would produce a gross sentencing disparity between the sentence being served and the sentence likely to be imposed at the time the motion was filed, and after full consideration of the defendant's individualized circumstances." USSG § 1B1.13(b)(6). In addition, § 1B1.13(c) provides:

> Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement [but] may be considered for purposes of determining the extent of any such reduction.

Rodriguez-Mendez argues he qualifies for relief under § 1B1.13(b)(6) because he has served more than 10 years of an unusually long sentence and the First Step Act eliminated his mandatory life sentence, producing the requisite gross disparity.

**A. Is Rodriquez-Mendez Serving an Unusually Long Sentence?** The district court held that the Sentencing Commission's change in the law did not qualify Rodriguez-Mendez for relief under § 1B1.13(b)(6) because his life sentence is not unusually long in light of his violent and egregious conduct. We agree.[3]

_____

[3] Based in part on our decision in Crandall, the government argues, as it has in many other cases pending in this circuit and others, that § 1B1.13(b)(6) exceeds the

-5-

The Commission made no attempt to define "unusually long" in explaining the recent amendments. Rodriguez-Mendez argues a life sentence is always unusually long and produces the requisite disparity, since federal courts impose relatively few life sentences for serious drug trafficking offenses. However logical, the argument fails as an attempt at statutory construction because it would mean that every federal inmate serving a life sentence is eligible for a § 3582(c)(1)(A)(i) reduction if he has served ten years of that sentence. If Congress had intended in the First Step Act to mandate such across-the-board relief, it would have said so. Rather, like the district court, we conclude that "unusually long," an inherently comparative term, must be determined in the context of a particular defendant and his offense conduct.

The district court concluded that the life sentence imposed on Rodriguez-Mendez was not unusually long, taking into account his egregious conduct as the leader of a large, violent drug trafficking conspiracy. This is an acceptable approach in interpreting the statutes that must guide the Commission in "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied." 28 U.S.C. § 994(t). There is nothing unusual about the most serious offenders receiving the harshest sentences, and the record before the court in imposing Rodriguez-Mendez's life sentence justified the harshest sentence. For example, the PSR reported that one time, seeking to retaliate against a customer who had not paid him, Rodriguez-Mendez instructed his "employee" to threaten to kill the customer, his wife, and anyone else around.

---

scope of the Sentencing Commission's authority. The Supreme Court's grant of certiorari in Rutherford v. United States, No. 24-820, 2025 WL 1603603 (2025), appears to present this question. The Court recently heard oral argument in Rutherford. Because we conclude that Rodriguez-Mendez's § 3582(c)(1)(A) claims fail in any event, we will assume without deciding that § 1B1.13(b)(6) is a valid applicable policy statement.

Rodriguez-Mendez has also not shown a gross disparity between his life sentence and the sentence he would likely receive if sentenced when he filed for § 3582(c)(1)(A)(i) relief.  The First Step Act did not reduce his guidelines range -- which still includes a life sentence -- nor eliminate the sentencing judge's likely decision to sentence Rodriguez-Mendez at the high end of that range.  The bottom of the guidelines range for his lesser drug offense was 360 months, yet the sentencing judge sentenced him to the statutory maximum of 480 months.  Rodriguez-Mendez's contention that he would have received a lenient sentence on the lead charge but for the now-eliminated mandatory minimum is unpersuasive.  The district court did not err in holding that Rodriguez-Mendez is ineligible for relief under § 1B1.13(b)(6).

**B. The Specialized Medical Care Issue.**  In January 2022, Rodriguez-Mendez began experiencing severe pins and needles in both legs.  Inmates found him lying on the floor twice due to numbness.  In March, a nurse gave him a Ketorolac injection at the prison health center, but it was not effective.  Nor was a second injection he received two months later.  He began using a wheelchair.  In August, he was diagnosed with severe spinal stenosis.  The doctor recommended a neurosurgery consultation.  Due to delays and a prison transfer, he was unable to consult a neurosurgeon for almost five months.  There were also delays and complications with his MRIs, and they became outdated.  He eventually obtained new MRIs but was still awaiting a follow-up consultation when he filed his second motion for compassionate release relief in April 2024.  He also suffered several months of delays in seeing a physical therapist after the doctor's referral.

The amended § 1B1.13 includes subsection (b)(1)(C), which provides that a defendant can show extraordinary and compelling reasons for release if (1) he "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided" and (2) "without which the defendant is at risk of serious deterioration in health or death."  USSG § 1B1.13(b)(1)(C).  The district court concluded that Rodriguez-Mendez did not satisfy either condition.  We agree.

First, the court concluded Rodriguez-Mendez does not require specialized medical care that is not being provided. Even assuming the care Rodriguez-Mendez requires is "specialized," the prison has provided it. He has received the anti-inflammatory drug injections and physical therapy he requires, and he does not currently require surgery. His prescribed medication effectively manages his pain. Rodriguez-Mendez's own expert opined that the care he received was appropriate. And if he does need more extreme intervention in the future, the Bureau of Prisons has provided surgery for spinal stenosis when necessary. See, e.g., United States v. Martines, No. 94-127-3, 2022 WL 837243, at *2-3 (E.D. Pa. Mar. 21, 2022).

Rodriguez-Mendez argues the delays in treatment constitute denial of care. He cites a smattering of out-of-circuit district court cases analyzing delays under the prior policy statement but no case holding that mere delay can count as a denial of medical care under the amended policy statement. Rather, courts analyzing the issue under the new policy statement have concluded it is not abuse of discretion for the district court to deny compassionate release based on low-risk delays in medical care. See, e.g., United States v. Batista, No. 24-12764, 2025 WL 1251220, at *3 (11th Cir. Apr. 30, 2025). Compassionate release relief must be consistent with the amended policy statement. 18 U.S.C. § 3582(c)(1)(A). As the district court noted, "such delays are common even outside of prison, and they do not present an extraordinary and compelling reason for the defendant's release."

Second, even if the delay of spinal stenosis surgery is the failure to provide long-term or specialized medical care that Rodriguez-Mendez must show, the record supports the district court's finding that Rodriguez-Mendez has not shown the delays put him at risk of serious deterioration in health or death. His own expert stated that although it is possible for untreated spinal stenosis to cause severe health problems, it is "exceedingly rare for symptoms to progress to that degree." The expert described the "red flag symptoms" of spinal stenosis and explained that Rodriguez Mendez's

"clinical picture is fundamentally different from the red flag symptoms described." He also would not opine whether the delays caused Rodriguez-Mendez any harm.

The district court did not err in concluding that Rodriguez-Mendez has not shown "extraordinary and compelling" reasons for a sentence reduction.

**C. Rehabilitation.** Finally, Rodriguez-Mendez argues the district court erred by failing to consider his evidence of positive rehabilitation. Although post-sentencing rehabilitation can be considered in combination with other factors, rehabilitation alone cannot constitute an extraordinary and compelling reason to modify a sentence. See 28 U.S.C. § 994(t).

The assertion the district court did not *consider* this evidence in denying § 3582(c)(1)(A) relief is rank speculation because even the strongest evidence of rehabilitation would not overcome the failure to show an extraordinary and compelling reason making Rodriguez-Mendez eligible for relief under amended § 1B1.13(b)(6). Thus, while positive rehabilitation efforts are significant and should be noted both to praise the defendant and to assist in appellate review, the district court did not err or abuse its discretion in declining to specifically respond or comment on this argument. As we held in United States v. Sherman, "[t]he district court did not specifically mention [defendant's] rehabilitative efforts, but as at an original sentencing, 'not every reasonable argument advanced by a defendant requires a specific rejoinder by the judge.'" 960 F.3d 978, 982 (8th Cir. 2020) (quotation omitted).

For the foregoing reasons, the Order of the district court dated August 29, 2024, is affirmed.

_____